In the Matter of the ESTATE of Cynda Charty CULLY, Seminole Roll No. 575, Deceased.

James CULLY and Ambrose Cully, a Minor, Plaintiffs in Error,

v.

Jonah CHARTY, Executor, Homer Harjo, Wayne Edward Shaw, Hettie Harjo, now Frye, Viola Harjo, now Spain, Allen Harjo and Carlee Harjo, Defendants in Error.

No. 36206.

Supreme Court of Oklahoma.

Nov. 9, 1954.

Charles E. Grounds and E. Keith Cooper, Seminole, for plaintiffs in error.

Mike Foster, Oklahoma City, and Allen G. Nichols, T. H. Williams, Jr., and Rudolph Hargrave, Wewoka, for defendants in error.

BLACKBIRD, Justice.

This appeal involves the right of James Cully, surviving full blood Seminole Indian, second husband of Cynda Charty Cully, another full blood Seminole, now deceased, to (probate) homestead rights in a certain 120-acre tract situated in Seminole County, that was the couple's (constitutional) homestead during her life, and on which said surviving husband and a minor son, Ambrose, continued, after her death, to reside. It also involves other questions concerning the rights of these surviving heirs in relation to those of others, in this and decedent's other property. The tract referred to was said decedent's allotment as a member of the Seminole Tribe and was admittedly restricted against alienation during her lifetime. It will hereinafter be referred to as "Parcel A." In addition to it, Mrs. Cully, at her death in Seminole County on February 26, 1952, was seized

of undivided interests she had inherited in her previous husband's allotment as a full blood member of the same tribe. We will hereinafter refer to these interests as: "Parcel I." She also had an automobile and some $47,000 in restricted funds on deposit in the office of W. O. Roberts, Area Director of the U. S. Indian Service, at Muskogee, Oklahoma. In the will, she had duly executed before the U. S. Commissioner residing at Wewoka, she bequeathed the said husband, James Cully, and her minor son by him, Ambrose, along with four grown sons and daughters by a former husband, and a grandson (son of a predeceased son by the same father), which latter group we will hereinafter refer to as the "Harjos", an undivided one-seventh interest each in the aforesaid restricted Indian funds, but wholly disinherited said surviving husband and minor son, not only as to her personal property, such as household goods and automobile, but also as to her real estate, except that she devised the boy, Ambrose, a certain 40-acre tract carved out of Parcel A. All the rest and remainder of both her allotted (Parcel A) and inherited (Parcel I) lands, she devised to various named individuals of the Harjo group. To one of them, Hettie, she bequeathed all of her "household goods and effects, furniture, automobile, livestock and farming equipment * * *".

The will was admitted to probate in the County Court of Seminole County, March 25, 1952, on the petition of one Charty, who was named executor therein; but within two weeks thereafter, James Cully filed his election to take under the State laws pertaining to intestate succession, instead of under the will; and, on his petition therefor, said Court entered an order on August 15, 1952, setting apart all of Parcel A as probate homestead for the use of him and the minor son, Ambrose. On the same date the Court ordered a partial distribution of the funds on deposit in the Area Director's office to each of the seven above-named heirs and legatees in the amount of $1,000 each. In May, previously, James Cully had obtained by order of said court, a family allowance of $150 per month for nine consecutive months (with payments retroactive from March 1) until November 1, 1952.

When said County Court entered its order approving the executor's final report and decreeing distribution of the testatrix' estate, it revoked and cancelled its previous order setting over Parcel A (as a whole) as homestead for the use and benefit of the surviving husband, James, and minor son, Ambrose; and specifically denied them all homestead rights therein, apparently having arrived at the conclusion that said property, being under Federal Indian restriction, such rights were lost to them by the will's devise of most of it to other heirs. Accordingly, the court decreed distribution of said parcel and the aforesaid restricted Indian funds as contemplated in the will, but held the will ineffective as to all of the testatrix' inherited Indian real estate, including Parcel I, and of the latter, distributed to James Cully, a child's or one-seventh part in accord with his election to take under the laws of intestate succession. It also decreed distribution, as contemplated in the will, of testatrix' automobile and other personal property, subject to the right of James Cully to claim a child's part or one-seventh interest in that also.

Upon James Cully's appeal to, and a trial de novo by, the District Court, said Court affirmed the County Court's decree as to testatrix' allotted lands and its denial of homestead rights therein claimed for him and the minor, Ambrose, but reversed said decree as to the distribution of testatrix' personal property, including the automobile, holding all of the heirs entitled to a one-seventh interest therein; and reversed said decree as to testatrix' inherited real estate interests, on the ground that they, like the allotted lands, were under Federal restriction and not subject to State statutes with reference to the rights of a surviving spouse. Said District Court also supported its determination with a conclusion that James Cully had waived his previous election to take under the State laws of intestate succession "by participation in and receiving benefits, from the estate and under the last will and testament of" the decedent. From said judgment, the present appeal has been perfected on behalf of the

surviving husband, James Cully, and the minor son, Ambrose. They will hereinafter be referred to as appellants.

Under the first and third propositions in their briefs, appellants concede that under the previous decisions of this Court and the United States Supreme Court, the testatrix' allotment, Parcel A, is restricted by Federal law and is not subject to State laws concerning intestate succession. But they assert that under the law and previous decisions, homestead rights are unaffected by said Federal restrictions on alienation. They also contend that testatrix' inherited real estate (Parcel I), like her personal property, is unrestricted; and that the requirements promulgated by the Stigler Act, Act of Congress of August 4, 1947, 61 Stat. 731, 25 U.S.C.A. § 355 note, for the valid sale of such interests (if they are "restrictions", rather than mere procedural requirements) do not run with the land, but are merely personal to certain classes of Indians of which they are not members. In other words, appellants concede that James Cully's election to take under the State laws of intestate succession was ineffective to entitle him and/or the minor son to any distributive share or interest in the fee simple title to testatrix' allotted land, but assert that it was fully effective as to her inherited real estate, and to entitle them to homestead rights in both Parcel A, and in the personal property that was a part of the Cully homestead. Not only this, but, as to the automobile, the appellant, James Cully, maintains that it should be his sole property citing Chap. 11, sec. 1, Session Laws 1953 p. 253, Tit. 84 O.S.A. § 232.

■ There can be no question but that Parcel A, even though concededly under Federal restrictions as to its alienation, is subject to our state laws and Constitution governing homestead rights. See In re Carothers' Estate, 196 Okl. 640, 167 P.2d 899, and the authorities therein cited. Our Constitution guarantees those rights to Indians as to other citizens (see especially Barnett v. Love, 118 Okl. 31, 248 P. 645, cited in the Carothers case) and under it and our statutes, all real estate devises are subject thereto, with the full enjoyment and

beneficial use of such property to the devisee being delayed or suspended until the abandonment or other expiration thereof. Such homestead rights have never been a proper subject of testamentary disposition in this jurisdiction, Gassin v. McJunkin, 173 Okl. 210, 48 P.2d 320, though they may be cut off or terminated by an approved sale. Smith v. Cuff, 136 Okl. 24, 275 P. 1064. In re Cole's Estate, 85 Okl. 69, 205 P. 172; Bacus v. Burns, 48 Okl. 285, 149 P. 1115; Holmes v. Holmes, 27 Okl. 140, 111 P. 220, 30 L.R.A.,N.S., 920. Both the County Court and the District Court, which latter we will hereinafter refer to as the "trial court", therefore erred in refusing, by their judgments, to recognize and reinstate such rights of appellants, unless they were waived.

■ As to deraignment or devolution of fee simple title, as distinguished from homestead rights of use and possession, the previous determination of this Court that our laws pertaining to intestate succession are superseded by the Federal law authorizing a restricted Indian to make a will disinheriting his or her spouse, Tiger v. Timmons, 147 Okl. 141, 295 P. 614, applies to *all* restricted real estate; and we are unable to follow, or concur in, appellant's argument that the testatrix' inherited real estate interests (Parcel I) are not "restricted" under the rule. In this connection, see Parnacher v. Hawkins, 203 Okl. 387, 222 P.2d 362, and the brief review of decisions therein contained. While the Stigler Act, supra, in its opening paragraph, provides that "all restrictions upon all lands in Oklahoma belonging to members of the Five Civilized Tribes, whether acquired by allotment, inheritance, devise, * * * of whatever degree of Indian blood, * * * shall be, and are hereby, removed at and upon his or her death: * * *", said paragraph also contains the important proviso that "except as provided in subdivision (f) of this section, no conveyances * * * of any interest in land acquired before or after the date of this Act by an Indian heir or devisee of one-half or more Indian blood, when such interest in land was restricted in the hands of the person from whom such Indian heir

or devisee acquired same, shall be valid unless approved in open court by the county court of the county in Oklahoma in which the land is situated; * * *". The judgment of the trial court refers to Parcel I as both restricted and "tax exempt" property of testatrix, and appellants do not deny that it possessed that character in her hands, and while she lived. These interests in the fee simple title to land therefore came under the restrictions imposed by the above quoted portion of the Stigler Act. Nor did the testatrix' death free them from such restrictions. As she left none other than full blood members of one of the Five Civilized Tribes (Seminole) as her heirs, said interests were still restricted in their hands, as such heirs and/or devisees. See Sec. 9, Act of Congress of May 27, 1908, 35 Stat. 312; Act of Congress of January 27, 1933, 47 Stat. 777, 25 U.S.C.A. § 355 note; Green v. Campbell, 187 Okl. 54, 100 P.2d 997; Glenn v. Lewis, 10 Cir., 105 F. 2d 398. We think appellant's argument that the Federal restriction, as imposed or continued in force by the Stigler Act, is merely personal or a restriction upon a class of persons, rather than being a restriction on real estate that runs with same, is irrelevant to the issue and may be said to beg the question. The restriction's important feature, as far as concerns the issue here, is that it is a *Federal* restriction imposed by the Congress of the United States. In its requirement that such interests can be validly conveyed only with the approval of the county court, we see no distinction in principle between the Stigler Act and the earlier restriction placed upon full blood Indian heirs by Sec. 9 of the Act of Congress of May 27, 1908, although the procedure is different in some details. See Marcy v. Board of Com'rs, 45 Okl. 1, 144 P. 611. Both are "in the nature of a restriction by Congress, on the alienation of land * * * and as such can only be removed by," the proceedings specified in the laws passed by that body, "through the instrumentality of the county court. * * *" Tirey v. Darneal, 37 Okl. 606, 133 P. 614, as quoted in Smith v. Cuff, supra [136 Okl. 24, 275 P. 1066]; Marcy v. Board of Com'rs, supra. In the approval of conveyances by

such Indians, the county court is acting upon no independent jurisdiction, but is merely exercising the jurisdiction granted it by Federal law and—as a Federal agency—for that particular purpose. As it thus must be concluded that the restriction now in effect, by reason of the proviso in Sec. 1 of the Stigler Act, supra, on the inherited (as well as the allotted) real estate of the testatrix is a federal restriction (no matter what else may be said of it) that real estate is also bound by the rule of Tiger v. Timmons, supra, under which its devise by a valid will duly executed before one of the officials (including a U. S. Commissioner) prescribed by Federal Law, is immune from operation of the Oklahoma Statute, Tit. 84 O.S.1951 § 44, prohibiting a spouse from bequeathing or devising away from his or her surviving spouse more of his or her estate than would go to the latter in case of intestacy. The trial court was therefore correct in its judgment that said real estate should be distributed as devised in the testatrix' will, notwithstanding the fact that the appellant surviving husband had filed his election to take under the State laws of intestate succession.

■ Under the above rule, however, the Federal laws effectuating restrictions on the alienation of Indian lands only supersede the State law as to such real estate, so that said Court was correct in holding appellant entitled to a child's part, or one-seventh interest in any and/or all of said testatrix' personal property, including the automobile. Long v. Darks, 184 Okl. 449, 87 P.2d 972. The argument of the appellant husband that he alone was entitled to the automobile is not sustained under our statute prescribing the components of a homestead, Tit. 58 O.S.1951 § 311. Nor is it sustained by Chap. 11, sec. 1, Sess.Laws 1953, 84 O.S.A. § 232, supra, because the latter law had not yet become law as early as testatrix' death or said appellant's election to take.

■ ■ We cannot concur in the trial court's announced conclusion that James Cully had waived his election by participating in "benefits" under his deceased wife's will. Said Court's judgment does not indicate to what "benefits" it refers, but

the only such benefit mentioned in the briefs, is his participation in the partial distribution of testatrix' restricted funds on deposit in the Area Director's office. Appellants say this fact has no bearing or relevancy because under the partial distribution or distributions in which James Cully has participated, he has not received as much as the one-seventh portion of the $47,000 bequeathed to him under the will, and to which he is entitled, *independent of the will,* under the state laws of intestate succession. Appellees do not assert that these restricted funds would descend any differently under said laws, than under the will. The County Court and District Court both concurred in the equal distribution of these funds and the validity of such distribution is not properly an issue in this appeal. Therefore, upon the unquestioned hypothesis that James Cully was entitled to receive his one-seventh portion of this money either under the will or under the law, we see nothing about his conduct, generally, or his participation in receipt of these funds, specifically, to constitute a waiver of his previous election, for usually such conduct, to constitute such waiver, must be inconsistent with such election. See Carlile v. Harmon, 179 Okl. 303, 65 P.2d 495; 57 Am.Jur., "Wills", Sec. 1561, and authorities cited in the notes thereto; Annotations at 22 A.L.R. 437, 68 A.L.R. 507, and 171 A.L.R. 649.

The foregoing disposes of all of appellant's contentions except the one advanced under their fourth proposition that "the trial court" abused its discretion in "refusing" to allow payment to them, for any period exceeding nine months, of a family allowance as testatrix' surviving spouse and minor child. By reference to the record, we observe that the order granting said family allowance was entered by the County Court, rather than by the District Court, from whose judgment the present appeal is taken, and to whom we have referred to herein as the "trial court." Not only this, but we find no record of any objection having been made to this order, nor do we find that any application for continuance of such benefits was made until

December 12, 1952, on which day said County Court entered its decree of distribution. Nor does the record show that the District Court, on appeal and trial de novo, ever specifically ruled upon said question, though we find that a petition was filed in that Court January 27, 1953, for reinstatement and continuance of such family allowance payments. Under such circumstances, there not only appears no "refusal" (as distinguished from "failure") on the part of either court to continue such payments "during the progress of the settlement of the estate," Tit. 58 O.S.1951 § 314, but the question of whether or not such payments should have been continued is not before us. Decision on that question is therefore reserved.

The judgment of the trial court is affirmed as to the interest of the appellant, James Cully, in testatrix' personal property and her allotted and inherited real estate; it is reversed in so far as it denied appellants' homestead rights in that portion of her property that was established to have been the Cully family's homestead.

HALLEY, C. J., JOHNSON, V. C. J., and CORN and WILLIAMS, JJ., concur.